UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRI L. STEVENS,

    Plaintiff,

v.

NATIONAL LIABILITY & FIRE
INSURANCE COMPANY,

    Defendant.

Case No. 13-12920
Honorable Laurie J. Michelson

**OPINION AND ORDER REGARDING DEFENDANT'S MOTIONS IN LIMINE TO STRIKE PLAINTIFFS' EXPERTS [59, 60, 61, 62, 66]**

On June 2, 2012, Plaintiff[1] Terri Stevens was injured in a car accident while riding in a cab. Her condition has worsened over time. She can no longer speak and has difficulty understanding others. Stevens filed this lawsuit asserting that her aphasia and cognitive decline are a result of the accident. She seeks commensurate insurance benefits from Defendant National Liability & Fire Insurance Company. National's position is that the accident did not cause Stevens' decline in health. Instead, some other condition manifested itself after the accident.

A trial is set to begin in this case in about three weeks (Dkt. 63), and the parties are exhaustively disputing the evidence that will be presented to the jury. In particular, over the past five weeks, the parties have filed 15 motions in limine (some are styled as motion to strike). (Dkts. 42–45, 48, 50, 51, 59–62, 65, 66, 69, 70.) Seven of these motions (Dkts. 42–45, 48, 51, 70) have been ruled on or were otherwise resolved (*see* Dkts. 57, 63, 73).

---

[1] Plaintiff has begun captioning this case as Guardian Care, Inc. v. National Liability & Fire Insurance Company. (*See* Dkt. 67.) Although she finally filed a motion to substitute Guardian Care as Plaintiff (Dkt. 72), that motion has not been granted and will not be granted until the parties evidence (by producing the state court order or equivalent proof) that Guardian Care is Stevens' legal guardian.

This opinion and order disposes of two more: the Court will grant in part National's motion in limine to preclude Dr. Dawit Teklehaimanot from testifying about the cause of Stevens' aphasia (Dkt. 59) and will grant in part National's motion to strike Dr. Steven Newman from testifying altogether (Dkt. 66). This opinion and order also partly addresses three other motions—National's motions to preclude Dr. Peter Samet, M.D., Holly Creedon, RN, and Dr. Bradley Sewick, Ph.D. from testifying about the cause of Stevens' aphasia at trial (Dkts. 60–62)—by ordering these three proposed trial witnesses to appear for the *Daubert* hearing set for October 1, 2015 at 9:00 a.m.[2]

## I.

National says that under Federal Rule of Evidence 702, the Court should preclude Dr. Teklehaimanot from telling the jury that, in his opinion, the cause of Stevens' aphasia was the car accident. (*See generally* Dkt. 59, Def.'s Mot. to Strike Dr. Teklehaimanot.) The Court agrees.

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

---

[2] None of these motions state whether National sought concurrence from Stevens. Yet the Court has previously directed National to comply with the District's local rules regarding concurrence. Relatedly, the parties have not responded to two emails from the Court, the last of which specifically asked, "In light of the recent filings, the parties are to advise the Court whether (1) the suggestions to the proposed final pretrial order were overlooked or considered but rejected, and (2) whether the parties have had the in-person meet and confer [to discuss outstanding issues with experts]."
    As the Court obviously expects strict adherence to its orders, local rules, and federal rules of evidence and procedure, from this point forward, the Court will impose sanctions, up to and including dismissal or default judgment, for any additional failures to comply with the procedural rules that govern this case.

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Or, as the Supreme Court concisely stated in *Daubert v. Merrell Dow Pharm., Inc.*, this Court must decide whether Dr. Teklehaimanot's opinion "rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). In assessing reliability, federal trial courts are to consider "whether a theory or technique . . . can be 'and has been tested'"; "whether the theory or technique has been subjected to peer review or publication"; "the known or potential rate of error"; and "general acceptance." *Daubert*, 509 U.S. at 593–94. But "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).

    The proponent of expert testimony, here Stevens, has the burden of showing by a preponderance that her experts are qualified and their methods reliable. *See* Fed. R. Evid. 702 advisory committee note (2000); *Daubert*, 509 U.S. at 593 n.10. Still, exclusion remains the exception, *see* Fed. R. Evid. 702 advisory committee note (2000), and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," *Daubert*, 509 U.S. at 596. The decision whether to admit expert testimony falls squarely within this Court's discretion. *See United States v. Ashraf*, 628 F.3d 813, 826 (6th Cir. 2011); *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 430 (6th Cir. 2007).

    National says that Dr. Teklehaimanot's opinion should not be allowed to pass through Rule 702's gate because (1) he is not a neurologist but instead a physical medicine and rehabilitation specialist, (2) he did not review Stevens' treatment records from before the car

3

accident, (3) his testimony suggests that he did not review any articles about the causes of aphasia, (4) he conceded that he could not interpret Stevens' brain MRI at any great level of detail, and (5) he relied heavily on accounts provided to him by Stevens, her daughter, and her daughter-in-law in reaching his opinions. (*See* Dkt. 59, Def.'s Mot. to Strike Dr. Teklehaimanot at ¶¶ 2, 7–11.)

Stevens responds that Dr. Teklehaimanot (as well as Dr. Sewick, Dr. Samet, and nurse Creedon) each "wrote treatment reports and came to their assessment/conclusions during the care and treatment of Terri Stevens." (Dkt. 67, Pl.'s Resp. to Def.'s Aug. 28, 2015 Mots. in Limine ("Pl.' Resp.") at 4.) Stevens also says that National's arguments go to the weight of her experts' testimony not its admissibility. (Pl.'s Resp. at 5.) Finally, Stevens promises to "lay the foundation at the time the treating experts testify." (*Id.*)

Simply because Dr. Teklehaimanot treated Stevens does not mean he is free to testify about the cause of her aphasia. "Generally, a treating physician may provide expert testimony regarding a patient's illness, the appropriate diagnosis for that illness, and the cause of the illness. However, a treating physician's testimony remains subject to the requirement set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), that an expert's opinion testimony must 'have a reliable basis in the knowledge and experience of his discipline.'" *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir. 2009) (citation omitted); *see also In re Aredia & Zometa Products Liab. Litig.*, 483 F. App'x 182, 187 (6th Cir. 2012) ("[A] treating physician's testimony is subject to *Daubert*.").

*Nemeth v. Citizens Financial Group*, No. 08-CV-15326, 2012 WL 3278968 (E.D. Mich. Aug. 10, 2012), is instructive on how Rule 702 applies to testimony from a treating health-care professional. There, Citizens Financial sought to exclude Nemeth's social worker and therapist,

4

Lajiness, from telling the jury about Nemeth's emotional distress. *See id.* at *2. Although in the context of deciding whether Lajiness could testify without producing a Federal Rule of Civil Procedure 26 report, the court concluded that Lajiness could testify to certain factual matter: "As Plaintiff's treating therapist, she will be permitted to testify regarding the factual symptoms that she observed or that Plaintiff reported to her, i.e. tearful, depressed, upset, crying, sleepless etc., on which she based her diagnosis of depression/anxiety. She also will be permitted to testify as to her conclusion that these symptoms were caused by Plaintiff's job loss, the Interview, loss of insurance, etc." *Id.* at *5. But the court found that Lajiness could not opine on Nemeth's post-traumatic stress syndrome in significant part because it would not meet the requirements of Rule 702. *Id.* at *6. In particular, the court noted that Lajiness was "trained as a social worker, not a psychiatrist or even a psychologist" and that she had exhibited a very poor understanding of the Diagnostic and Statistical Manual of Mental Disorders. *Id.* at *6. In short, said the court, Lajiness "lack[ed] fundamental knowledge" regarding PTSD. *Id.*

*Nemeth* thus helps draw the line dividing testimony that requires screening under Rule 702 and testimony that does not. On one side lie historical facts of which Dr. Teklehaimanot can recount for the jury free of Rule 702's strictures. For example, if at a particular visit, Dr. Teklehaimanot needed to form an opinion on the cause of Stevens' aphasia to provide treatment, he would be permitted to testify as to his thinking *at that visit*. (*See e.g.*, Pl.'s Resp. Ex. C, Oct. 16, 2012 Treatment Note ("Neurologically, [Ms. Stevens] appears to be suffering from sequela of closed head injury resulting with headache, dizzy spells, balance problems, memory issues, speech problem and impediments. . . . She . . . has to be seen by a neuropsychologist to rule out any closed head injuries.").) Such testimony would be nothing more than recounting historical facts.

5

On the other side of the line lies Dr. Teklehaimanot's opinion as to the cause of Stevens' aphasia not previously formed for the purpose of providing treatment. Any such opinion must satisfy the requirements of Rule 702. So the question is whether Stevens has shown by a preponderance of the evidence that Dr. Teklehaimanot's opinion about the cause of Stevens' aphasia—once divorced from the historical context in which any such opinion arose—passes through Rule 702's gate.

The answer is "no" and for several reasons. For one, although Dr. Teklehaimanot saw Stevens on at least four occasions, he did not review any of Stevens' medical records from prior to the accident. (Dkt. 59, Def.'s Mot. Ex. A, Teklehaimanot Dep. at 10, 15–16, 26.) And Dr. Teklehaimanot acknowledged that if he had more of Stevens' medical records, he "would be in a better position to give a better opinion." (Teklehaimanot Dep. at 43.) Second, Dr. Teklehaimanot's medical specialty is not the most on point for determining the cause of aphasia. True, he is a physiatrist and testified that "neurologist[s] actually do not treat traumatic brain injury[;] [i]t's a physiatrist who treats traumatic brain injury." (*Id.* at 20.) But treating or assessing a patient with traumatic brain injury is not the same as determining whether traumatic brain injury caused aphasia. Indeed, Dr. Teklehaimanot suggested that he could only interpret an MRI at a basic level (*id.* at 28–29), and when he was asked if he had "reviewed the literature with regard to aphasia and closed head injuries," he provided this vague response: "I have taken the residency program. I read articles, you known, on a regular basis through the journals I get. So that's what I can tell you" (*id.* at 22; *see also id.* at 43). Third, Dr. Teklehaimanot also admitted that he had not, recently at least, treated a patient who, like Stevens, had progressive aphasia as opposed to aphasia immediately after an injury. (*Id.* at 32–33.)

Fourth, and most significantly, it appears that Dr. Teklehaimanot's primary basis for concluding that the car accident caused Stevens' symptoms was that Stevens was "independent" prior to the accident but had significant limitations afterwards:

> Q. . . . How many times have you had a case that somebody has a head injury and they develop aphasia?
>
> A. Well, to tell you the truth, that's not frequent. However, you know, if a person comes with the symptom and whether they have been—have fallen or are injured in a motor vehicle accident or a gunshot wound, you can make, you know, that—assumptions. . . .
>
> Q. . . . I know doctors do differential diagnoses. Have you considered the fact that this could be something genetic or some kind of dementia?
>
> A. No, I never entertained that.
>
> Q. Okay. Would—if you were aware that her mother and her aunt had both had dementia, would that make you think that perhaps there could be some familial connection here?
>
> A. You know, that's not my expertise, and I don't want to testify on something like that.
>
> Q. Okay. But given the fact that you haven't reviewed any of her previous medical records or her ER admissions on the date of the accident, are you still able to tell me more probably than not that that—her aphasia is caused—was a result of the motor vehicle accident?
>
> A. Counselor, this is all I can tell you. What I can tell you is in question her[]—this patient and in questioning Asia, the daughter, in questioning another person . . . I think [maybe] her daughter-in-law— . . . these people, all of them told me that the patient was pretty independent. It was after the accident this has—that her situation has changed, her medical picture. And just based on what they told me, I'd say that it is related to the motor vehicle accident. I don't know what has happened to her before that, I don't know her before that, so I cannot tell you, you know, what's going on what has happened with her.

(Teklehaimanot Dep. at 21, 24; *but see id.* at 45–46 (noting that opinion was also based on March 6, 2014 MRI report, police report, and photo of Stevens' face).)

7

Given the foregoing, Stevens has not persuaded the Court that Dr. Teklehaimanot's opinion on the cause of her aphasia will be helpful to a jury. His opinion is based on little more than timing: prior to the accident, no aphasia; afterwards, aphasia. But a juror can observe that fact for herself and just as easily speculate that the accident was the cause. To be helpful to a juror, which is what Rule 702 demands, Dr. Teklehaimanot must be able to provide some *expert* insight beyond that of what a juror could see. His opinion must be grounded in some type of "scientific, technical, or other specialized knowledge" obtained from his training or reached via a methodology that—as a physician—he is more qualified to apply than a juror. *See* Fed. R. Evid. 702. Temporal proximity is not that.[3]

\* \* \*

Accordingly, Dr. Teklehaimanot will be limited to informing the jury about his opinion as to the cause of Stevens' aphasia in the course of recalling his treatment of Stevens. Dr. Teklehaimanot is barred from otherwise opining on the cause of Stevens' aphasia.

**II.**

Much of the foregoing reasoning applies to the other three medical professionals that National seeks to strike: Dr. Samet, Dr. Sewick, and Creedon are all permitted to testify as to historical facts, i.e., their treatment of Stevens and any explanations for providing that treatment.

---

[3] Notably, the Court's partial ruling on Stevens' motion to exclude Dr. Metler is similar: "a juror might, herself, surmise that, one, if the head injury is not severe, it will not rob someone of the ability to think and speak. And two, if symptoms begin and then progress weeks or even months after an accident, something other than the accident may very well be the cause of the symptoms. So, to be helpful to a jury and for Dr. Metler's opinion to be based on reliable methodology, both requirements of Rule 702, Dr. Metler must be able to provide some insight on the causation issue beyond that of what a lay person could infer. Her opinion must be grounded in some type of specialized knowledge obtained from her training and experience as a neuropsychologist or reach a valid scientific methodology that as a neuropsychologist she is qualified to apply." (Final Pretrial Hr'g Tr. at 29–30.) The difference between Dr. Metler and Dr. Teklehaimanot, however, is that the Court does not have deposition testimony from Dr. Metler to assess the bases for her opinions and so it has noticed her for a *Daubert* hearing.

8

Beyond that, however, their opinions are not excepted from Rule 702 merely because of their treating status.

Unlike with Dr. Teklehaimanot, however, these medical professionals have not been deposed. As such, the Court is not as informed as it could be to determine the reliability of their opinions or to assess their qualifications. So on or before September 28, 2015, Stevens is to provide the Court with a supplemental filing that precisely states the opinions that each of these experts will offer at trial, including whether their opinions will be limited to those formed during and for the purpose of treatment. To the extent that Dr. Samet, Dr. Sewick, or Creedon will offer an opinion on causation beyond recounting the treatment he or she provided to Stevens, he or she must appear at the *Daubert* hearing scheduled for October 1, 2015.[4]

### III.

Pursuant to Federal Rule of Civil Procedure 37, National seeks to strike Dr. Steven Newman, a neurologist, as a trial witness. (*See generally* Dkt. 66, Def.'s Mot. to Strike Dr. Newman.) National says that Dr. Newman is a retained expert who has (1) not produced an expert report as required by Federal Rule of Civil Procedure 26 and (2) was not disclosed until the final pretrial conference. Stevens has not responded to the motion, and the deadline to do so has passed. (Dkt. 63, Sept. 3, 2015 Order ("Any further motions in limine or to exclude expert-witness testimony must be filed on or before September 11, 2015 with responses due by

---

[4] The Court is unlikely to be receptive to a claim that this is insufficient notice or to a request to adjourn the *Daubert* hearing. At the final pretrial conference held three weeks ago, the Court informed the parties that the Court might notice additional experts for the October 1 hearing: "[A]fter you all meet and figure out what you want to do about these experts, if you can reach some sort of agreement and we're going to have motions on all of them or most of them. Then I'll know if I get a response on [September 9th] to the motions in limine, at that point, I'll let the parties know whether the October 1 *Daubert* hearing is going to involve other doctors. And each side, whose ever expert it is, doctors and nurses, will have to let them know that that hearing is October 1 at 9:00 a.m." (Dkt. 64, Final Pretrial Hr'g Tr. at 15.)

September 18, 2015.").) However, as National's motion is very similar to one it filed much earlier in the case (Dkt. 11), the Court has considered Stevens' response to that motion (Dkt. 13). For the reasons that follow, the Court GRANTS IN PART National's motion.

To understand the basis for National's motion, a bit of procedural history is necessary. The deadline for filing expert reports in this case was December 30, 2013. (Dkt. 9.) On April 1, 2014, National's counsel sent Stevens' counsel a letter that read in relevant part: "Expert disclosures, including reports from your expert witnesses, were due to us on or before December 30, 2013. To date, we have not received any such reports. Please provide these reports within seven days, or we will be forced to file a motion." (Dkt. 66, Def.'s Mot. to Strike Dr. Newman at Pg ID 809.) On April 4, 2014, Stevens' counsel responded via email:

> To date, I have not had her examined by retained experts due to this guardianship issue and I may only use retained experts in rebuttal since her treating physicians are all board certified experts in their field.
>
> I can provide you retained expert reports once they have a chance to examine her and I can agree to allow you to take their deposition if you so choose. I believe we can work this out.

(Def.'s Mot. to Strike Dr. Newman at Pg ID 810.) Nonetheless, that same day, National filed a motion to strike Stevens' experts for failure to comply with Rule 26 (which, as noted, is similar to its present motion to strike Dr. Newman). (Dkt. 11.) In her response brief, Stevens stated: "Plaintiff had not retained experts due to the fact that plaintiff[']s health has continued to decline and defendant's own defense expert Dr. Riutta opined plaintiff needed 24 attendant care. . . . Plaintiff relied on Dr. Riutta's expert opinion in support of her claim. Plaintiff[']s counsel saw no need for any 'retained' expert since their did not appear to be any disagreement with plaintiff[']s treating experts' medical opinion." (Dkt. 13 at Pg ID 78–79.) On May 20, 2014, the Court

10

ordered the parties to participate in case evaluation. (Dkt. 18.) National withdrew its motion to strike a day later. (Dkt. 19.)

It is unclear precisely when, but Stevens has since decided to retain Dr. Newman, a neurologist, as an expert. What is clear is that Dr. Newman was not listed as a witness in a proposed final pretrial order submitted to the Court in July 2015. (*See* Def.'s Mot. to Strike Dr. Newman ¶ 12.) And National asserts that the first time it ever heard that Stevens intended to offer Dr. Newman's testimony at trial was during the final pretrial conference held on August 31, 2015. (Def.'s Mot. to Strike Dr. Newman ¶ 13.)

Given Stevens' failure to disclose Dr. Newman until the eve of trial, and National's credible claim that it would be prejudiced by the lack of a Rule 26 report and the opportunity to depose Dr. Newman prior to trial (*see* Def.'s Mot. to Strike Dr. Newman ¶ 17), National's claim that Dr. Newman should not be able to testify at trial is well taken. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

Still, the Court finds that a different course is more equitable in this case. *Cf.* Fed. R. Civ. P. 37(c)(1) ("In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard . . . (C) may impose other appropriate sanctions . . . ."). For reasons provided on the record at the final pretrial conference, the Court has already ruled as follows: "National's motion for an independent medical exam (Dkt. 41) is GRANTED insofar as Dr. Sahn may evaluate Stevens' current condition subject to Stevens' right to have Dr. Newman evaluate her current condition; National has the right to file a motion to strike or exclude Dr. Newman *insofar as any such motion addresses issues not related to Stevens' reexamination*."

(Dkt. 63, Sept. 3, 2015 Order at 1 (emphasis added).) In other words, the Court contemplated that Dr. Newman could offer a rebuttal to Dr. Sahn's assessment of Stevens' current condition at trial, but that National could otherwise move to exclude Dr. Newman's testimony. The Court now makes what it contemplated its ruling: Dr. Newman can testify in rebuttal to Dr. Sahn's assessment of Stevens' current condition but is barred from testifying on any other subject. Further, the parties should work out an exchange of expert reports regarding the reevaluation of Plaintiff and National will be granted leave to depose Dr. Newman.

## IV.

For the reasons given, the Court ORDERS as follows:

(1) Defendant's Motion in Limine to Strike Testimony of Dr. Teklehaimanot with regard to Aphasia and Causes of Aphasia (Dkt. 59) is GRANTED IN PART AND DENIED IN PART; Dr. Teklehaimanot will be limited to informing the jury about his opinion as to the cause of Stevens' aphasia only insofar as he is recounting opinions formed during and for the purpose of treatment; Dr. Teklehaimanot is barred from otherwise opining on the cause of Stevens' aphasia;

(2) Defendant's Motion to Strike Plaintiff's Expert Witness, Dr. Steven Newman for Failure to Comply with FRCP 26(a)(2)(A) and (B) and 37(c)(1) (Dkt. 66) is GRANTED IN PART AND DENIED IN PART; Dr. Newman is permitted to offer testimony that rebuts Dr. Sahn's assessment of Stevens' current condition, but is otherwise barred from testifying; Dr. Newman's rebuttal testimony is conditioned on (a) the production of a Rule 26 report and (b) his availability for a deposition at least five days prior to jury selection on October 9, 2015;

(3) National's motions to strike Dr. Peter Samet, M.D., Holly Creedon, RN, and Dr. Bradley Sewick, Ph.D. (Dkts. 60–62) remain pending; on or before September 28, 2015, Stevens is to precisely state the opinions that each of these experts will offer at trial, including whether their testimony will be limited to recounting opinions formed during and for the purpose of treatment; to the extent that Dr. Samet, Dr. Sewick, or Creedon will offer an opinion on causation beyond recounting the treatment he or she provided to Stevens, he or she is to appear and testify at the *Daubert* hearing scheduled for October 1, 2015.

SO ORDERED.

                                                  s/Laurie J. Michelson
                                                  LAURIE J. MICHELSON
                                                  UNITED STATES DISTRICT JUDGE

Dated: September 21, 2015

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 21, 2015.

                                                  s/Jane Johnson
                                                  Case Manager to
                                                  Honorable Laurie J. Michelson